**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| ENESCO GROUP, INC., | ) | No. 07 B 565 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ENESCO GROUP, INC., *et al.*, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11 A 402 |
| | ) | |
| LEONARD A. CAMPANARO, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | Judge Goldgar |

<u>**MEMORANDUM OPINION**</u>

This matter is before the court for ruling on the motion of defendant United States of America to dismiss Count VI of the amended adversary complaint of David R. Brown, chapter 7 trustee of the estate of debtor Enesco Group, Inc. ("Enesco").[1]  In Count VI, Brown asks the court to determine under section 505(a)(1) of the Bankruptcy Code, 11 U.S.C. § 505(a)(1), that the estate is entitled to a refund of wrongfully imposed federal tax penalties.  The United States moves to dismiss Count VI for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed. R. Civ. P. 12(b)(1) (made applicable by Fed. R. Bankr. P. 7012(b)).  Alternatively, the United States requests judgment on the pleadings on Count VI pursuant to Rule 12(c), Fed. R. Civ. P. 12(c) (made applicable by Fed. R. Bankr. P. 7012(b)).

_____

[1]     The complaint's caption erroneously names the plaintiff (or plaintiffs) as "Enesco Group, et al." It is unclear who "et al." is meant to include, but the only proper plaintiff, and the only plaintiff mentioned in the parties' papers, is Brown.

At first blush, subject matter jurisdiction would seem to be secure.  Because Brown wants

to recover tax penalties for the benefit of Enesco's creditors, the claim is "related to" the Enesco

bankruptcy case.  28 U.S.C. § 1334(b) (granting subject matter jurisdiction over proceedings

"related to cases under title 11").  But section 505(a)(2)(B) of the Code limits the jurisdiction

otherwise granted to bankruptcy courts in section 1334(b), declaring that a bankruptcy court may

not determine the estate's right to a tax refund unless certain prerequisites are met.  11 U.S.C. §

505(a)(2)(B).  As the United States correctly contends, Brown has failed to allege that he has met

those prerequisites.  The motion to dismiss Count VI will therefore be granted.  Brown will be

given leave to amend to make the necessary allegations.

## 1.  Background

### a.  Rule 12(b)(1) Standards

Because the United States contests subject matter jurisdiction, the first question is what

information can be considered in deciding the motion.  Challenges to subject matter jurisdiction

take two forms, facial and factual.  *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440,

443-44 (7th Cir. 2009).  A facial challenge questions the sufficiency of the complaint's

jurisdictional allegations.  *Id.*  "Facial challenges require only that the court look to the complaint

and see if the plaintiff has sufficiently *alleged* a basis of subject matter jurisdiction."  *Id.* at 443

(emphasis in original).  In ruling on a facial challenge, only the complaint is considered, and its

allegations are presumed true.  *Id.* at 444; *Alicea–Hernandez v. Catholic Bishop of Chi.,* 320 F.3d

698, 701 (7th Cir. 2003).

A factual challenge, on the other hand, concedes the sufficiency of the allegations but

questions whether there is in fact subject matter jurisdiction.  *Apex Digital*, 572 F.3d at 444.  The

presumption of truth falls away, *id.*, and the court looks "beyond the jurisdictional allegations of

the complaint and consider[s] any evidence submitted on the issue" to determine if there is

subject matter jurisdiction. *Farnik v. FDIC*, 707 F.3d 717, 721 (7th Cir. 2013).

The motion here presents a facial attack because the United States targets the sufficiency

of the amended complaint's allegations: the parties dispute whether Brown's allegations that his

accountant sent a letter to the IRS asking for a waiver of the penalties satisfies section

505(a)(2)(B). If, as Brown maintains, the letter is a proper refund request, the jurisdictional

limitation in section 505(a)(2)(B) is satisfied, and the court can reach the merits. If, as the United

States insists, the letter is not a proper refund request, the jurisdictional limitation applies, and

the road to the merits is closed. Either way, the resolution turns on the sufficiency of Brown's

allegations and is therefore a facial attack on jurisdiction, restricting the analysis to the amended

complaint and its exhibits.

### b. Facts

The following facts, then, are drawn from the amended complaint and exhibits. Judicial

notice has also been taken of the dockets in the bankruptcy case and adversary proceeding. Fed.

R. Evid. 201(d); *In re Brent*, 458 B.R. 444, 455 n.5 (Bankr. N.D. Ill. 2011) (noting that a

bankruptcy court "can take judicial notice of matters in its own records").

On January 12, 2007, three related businesses – Enesco Group, Inc. ("Enesco"), Gregg

Gift Manufacturing, Inc., and Enesco International Ltd. (the "debtors") – filed chapter 11

bankruptcy cases that were immediately ordered jointly administered. (Am. Compl. ¶ 8). On

January 24, 2007, the court approved the employment of Robert M. Fishman and the law firm of

Shaw Gussis Fishman Glantz Wolfson & Towbin LLC ("Shaw Gussis") as the Debtors' general

bankruptcy counsel. (*Id.* ¶ 10). About three months later, the court approved the employment of

Deloitte Tax LLP ("Deloitte") as the debtors' accountants. (*Id.* ¶ 12).

At the times relevant here, Enesco was obligated to complete and timely file an IRS Form

5471 (Information Return of U.S. Persons with Respect to Certain Foreign Corporations) for

each of the eighteen operating and dormant foreign subsidiary corporations in which it owned

controlling interests. Form 5471 is an informational form used to satisfy the reporting

requirements of section 6038 of the Internal Revenue Code, I.R.C. § 6038. (*Id.* Ex. 9 at 1).

Section 6038 requires taxpayers who fall within its scope to report information about the foreign

corporations in which they hold ownership interests. (*Id.*); I.R.C. § 6038(a).

A taxpayer required to complete a Form 5471 must attach the completed form to the

taxpayer's annual income tax return. (*Id.*); Treas. Reg. § 1.6038-2(i). The deadline for filing the

form is therefore the same as the deadline for the income tax return. When a taxpayer fails to

complete and file the Form 5471 on time, the IRS imposes a fixed dollar penalty of $10,000 per

foreign corporation for each annual accounting period. (*Id.* at 3); I.R.C. § 6038(b)(1). The

penalty is imposed even if the foreign corporation is dormant, although the filing procedure for a

dormant foreign corporation is less demanding: the taxpayer need only complete the first page of

the multi-page form. (*Id.* at 4); *see also* Rev. Proc. 92-70, 1992-2 C.B. 435 (1992).

Shaw Gussis and Deloitte advised some of Enesco's principals not to file Enesco's

consolidated income tax returns for the 2006 and 2007 reporting periods. According to Brown,

the lawyers and accountants told the principals that "the costs of filing Enesco's 2006 and 2007

tax returns would exceed any refunds to which Enesco might be entitled by the filing of these tax

returns, and . . . Enesco did not owe any taxes and should not proceed with the filing of these tax

-4-

returns in order to maximize the value of the Bankruptcy Estate." (Am. Compl. ¶ 41). Relying

on this advice, Enesco did not file the tax returns and so presumably did not file the Forms 5471

that would have accompanied the returns. (*Id.* ¶ 42).

In July 2008, after the deadlines for filing the Forms 5471 had passed, the Enesco

bankruptcy cases were converted to cases under chapter 7. (*Id.* ¶ 19). Brown was appointed

chapter 7 trustee. (*Id.*). On November 19, 2008, the court approved Brown's employment of

Alan D. Lasko as his accountant. (Bankr. Dkt. No. 539).

More than a year later, Brown received a notice from the IRS dated November 16, 2009,

addressed to Enesco in care of Brown. (Am. Compl. ¶ 22). The notice said that the IRS had

assessed a $10,000 penalty for each of Enesco's eighteen foreign subsidiaries for which Enesco

had failed to file a Form 5471 for the 2006 tax year. (*Id.*). Brown was instructed to pay the total

penalties of $180,000 within ten days of his receipt of the letter. (*Id.* Ex. 8). Brown paid the

penalties from Enesco's estate on December 3, 2009. (*Id.* ¶ 31).

About a month later, Lasko (Brown's accountant) sent a letter to the IRS stating that he

had filed Enesco's 2006 consolidated corporate return and the Forms 5471 for the foreign

subsidiaries. (*Id.* Ex. 10). Lasko acknowledged that the return and the forms were late but

requested a "waiver" of the penalties for the late filing, urging that "no penalty should be

assessed because the taxpayer had reasonable cause for the late filing of its 2006 Form 5471s."

(*Id.*).

In his letter, Lasko explained the circumstances he believed constitute reasonable cause

for the late filing. He pointed out that Brown first came into the picture when the bankruptcy

cases were converted to chapter 7, after the Form 5471 filing deadline had passed. (*Id.*). At that

time, Lasko said, Brown was a newly-appointed chapter 7 trustee, and Lasko did not have ready

access to Enesco's books and records, including tax returns for prior years. (*Id.*). Accordingly,

Lasko was "not immediately aware that Form 5471s were even required." (*Id.*). Once the need

to file the forms became clear, Brown completed and filed the Forms 5471 "as soon as

practicable." (*Id.*). In discussing the circumstances constituting reasonable cause, Lasko focused

on Brown. Lasko did not explain why Enesco failed to file the forms when they were due during

the period when Enesco was a chapter 11 debtor in possession of its bankruptcy estate. Nor did

Lasko ask for a refund or mention that Brown had paid the penalties.

The IRS answered Lasko's letter on March 16, 2010, denying the request for a "penalty

adjustment." (Am. Compl. Ex. 11). Without elaboration, the IRS declared that the information

Lasko had submitted did "not establish reasonable cause or show due diligence." (*Id.*). The IRS

advised Brown of his options. He was told he "may . . . petition a U.S. District Court for a

refund after [he] pay[s] the penalty in full." (*Id.*). The IRS did not acknowledge that the

penalties had already been paid.

On February 22, 2010, the IRS sent Brown a second notice of penalty, this one assessing

another $180,000 in penalties because of Enesco's failure to file the Forms 5471 for each of the

eighteen foreign subsidiaries for the 2007 tax year. (Am. Compl. ¶ 27). Brown paid the

penalties on June 3, 2010. (*Id.* ¶ 32). Brown does not allege that he requested a waiver or refund

of the 2007 penalties.

In February 2011, Brown filed a single-count adversary complaint against eight former

officers and directors of Enesco seeking damages in connection with the IRS penalties. (Adv.

Dkt. No. 1). On November 8, 2011, Brown amended his complaint to add claims against Shaw

-6-

Gussis, Deloitte, and the United States. (*Id.* No. 28).[2] Count I of the amended complaint alleges

that the former Enesco officers and directors breached their fiduciary duties to the company by

not ensuring the timely filing of the Forms 5471. Counts II and IV are directed at Shaw Gussis

and Deloitte and allege that those firms breached their employment contracts with Enesco by

failing to ensure the forms were timely filed. Counts III and V, also directed at Shaw Gussis and

Deloitte, allege that the firms committed legal and accounting malpractice, respectively.

In Count VI, the claim against the United States at issue here, Brown alleges that

Enesco's reliance on the advice of Shaw Gussis and Deloitte not to file the tax returns in order to

conserve estate resources constituted reasonable cause "pursuant to Section 6651 of the Internal

Revenue Code concerning why penalties should not have been imposed against Enesco for these

tax periods."[3] (Am. Compl. ¶ 42). In essence, Brown asserts he had reasonable cause that

excuses the filing of the Forms 5471 from the dates when Enesco should have filed the forms

until the date Brown filed them once he became trustee. Brown asks for a determination under

section 505(a)(1) of the Bankruptcy Code that the penalties were "wrongfully imposed and that

Enesco is therefore entitled to a refund." (*Id.* ¶ 45).

The United States answered the amended complaint and now moves to dismiss Count VI

---

[2]     Brown also named the IRS and the IRS Commissioner as defendants. As Brown
recognizes, however, the United States is the proper defendant for recovery of the refund. *See
Sampson Invs. v. Sampson*, 111 F. Supp. 2d 1064, 1065 n.1 (E.D. Wis. 2000). The IRS and the
Commissioner will therefore be dismissed as defendants.

[3]     The citation to I.R.C. § 6651 is incorrect. Section 6651 concerns reasonable cause
to excuse the failure to file tax returns timely or to pay the tax shown on a filed income tax
return. *See* I.R.C. §§ 6651(a)(1), (a)(2); *United States v. Boyle*, 469 U.S. 241, 243 (1985); *In re
Carlson*, 126 F.3d 915, 921 (7th Cir. 1997). The relevant section here is I.R.C. § 6038(c)(4)(B).
It concerns reasonable cause to excuse the late filing of a Form 5471. *See* I.R.C. § 6038(c)(4)(B);
*Congdon v. United States*, No. 4:09-CV-289, 2011 WL 3880524, at *2 (E.D. Tex. Aug. 11,
2011).

pursuant to Rule 12(b)(1) arguing that this court lacks subject matter jurisdiction. Alternatively, the United States moves for judgment on the pleadings on Count VI pursuant to Rule 12(c), arguing that Enesco's reliance on the advice of Shaw Gussis and Deloitte does not constitute "reasonable cause" as a matter of law.

### 2. Discussion

The motion of the United States to dismiss Count VI under Rule 12(b)(1) will be granted. As the United States correctly argues, section 505(a)(2)(B) is jurisdictional (a point Brown does not dispute), and the Lasko letter to the IRS concerning the penalties was not a proper request for refund that satisfies that section. Count VI will be dismissed for lack of subject matter jurisdiction. Without subject matter jurisdiction, the court has no power to entertain the motion for judgment on the pleadings. Because it appears he can supplement the amended complaint to cure the jurisdictional defect, however, Brown will be given leave to do so. Once the complaint is supplemented, the arguments of the United States under Rule 12(c) can be addressed.

### a. Subject Matter Jurisdiction

Subject matter jurisdiction refers to a court's power to adjudicate a case. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 160-61 (2010). The presence of jurisdiction is a threshold question, "the first question in every case," *State of Ill. v. City of Chi.*, 137 F.3d 474, 478 (7th Cir. 1998), because without it "the court cannot proceed at all," *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (internal quotation omitted).

The jurisdictional inquiry here involves three questions. The first is whether Brown's claim for a determination of the estate's right to a tax penalty refund is within the grant of

bankruptcy subject matter jurisdiction in section 1334(b), 28 U.S.C. § 1334(b).  The second is

whether section 505(a)(2)(B) of the Code, 11 U.S.C. § 505(a)(2)(B), limits the jurisdiction

otherwise conferred.  If the first two questions are answered yes, the third question is whether the

amended complaint sufficiently alleges a basis for subject matter jurisdiction given the limit in

section 505(a)(2)(B).  If the answer to that question is no, the motion of the United States must

be granted and Count VI dismissed.

### i. Bankruptcy Jurisdiction under Section 1334(b)

The answer to the first question is yes.  Brown's claim for a determination of the estate's

right to a tax penalty refund falls within federal bankruptcy jurisdiction because resolution of the

claim affects the amount of property available for distribution to creditors.  The claim is therefore

"related to" the Enesco bankruptcy case.  28 U.S.C. § 1334(b).

Sections 1334(a) and (b) of Title 28 of the United States Code contain the grant of

bankruptcy jurisdiction to the district courts.  *Kontrick v. Ryan*, 540 U.S. 443, 453 (2004);

*Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 (1995); *In re FedPak Sys., Inc.*, 80 F.3d 207,

211 (7th Cir. 1996); *Diamond Mortg. Corp. of Ill. v. Sugar*, 913 F.2d 1233, 1238-39 (7th Cir.

1990).  Congress granted district courts exclusive jurisdiction over bankruptcy cases, 28 U.S.C. §

1334(a), and concurrent jurisdiction over proceedings "arising under" the Bankruptcy Code or

"arising in" or "related to" bankruptcy cases, 28 U.S.C. § 1334(b).[4]

Brown's claim in Count VI does not "arise under" the Bankruptcy Code.  A proceeding

---

[4]    Pursuant to 28 U.S.C. § 157(a) and its Internal Operating Procedure 15, the
District Court for the Northern District of Illinois automatically refers bankruptcy cases and
proceedings to the bankruptcy judges of this district.  The subject matter jurisdiction of the
bankruptcy court is therefore derived from the jurisdiction of the district court.

"arises under" the Bankruptcy Code if the claim asserted in the proceeding is "created or

determined by a statutory provision of title 11." *Nelson v. Welch (In re Repository Techs., Inc.)*,

601 F.3d 710, 719 (7th Cir. 2010); *Wood v. Wood (In re Wood)*, 825 F.2d 90, 96 (5th Cir. 1987).

The right to ask for a federal tax refund is not a right the Bankruptcy Code creates. Whether a

refund is warranted depends instead on provisions of the Internal Revenue Code. *See Swain v.*

*U.S. Dept. of Treasury (In re Swain)*, 437 B.R. 549, 560 (E.D. Mich. 2010) (holding that a claim

involving a federal tax penalty does not "arise under" title 11); *see also Dunmore v. United*

*States*, 358 F.3d 1107, 1115 (9th Cir. 2004) (noting that "[t]he tax refund claims do not depend

on Title 11 for their existence, but instead depend on 28 U.S.C. § 1346(a)(1), and the trustee

could have brought them in the district court").[5]

Similarly, Brown's claim in Count VI also does not "arise in" a case under the Code. A

proceeding "arises in" a bankruptcy case if it concerns an administrative matter that has no

existence outside of bankruptcy. *Nelson*, 601 F.3d at 719; *Wood*, 825 F.2d at 97 (holding that

"arising in" jurisdiction covers "administrative matters that arise *only* in bankruptcy cases"

(emphasis in original)). Orders to turn over property of the estate and determinations of the

---

[5]      Brown's claim arguably would "arise under" title 11 if the claim were not a refund claim but one to determine the estate's tax liability before any tax or penalty had been paid. Under the Declaratory Judgment Act, federal courts are prohibited from granting declaratory relief "with respect to Federal taxes" in cases otherwise within their jurisdiction precisely to ensure that taxpayers pay first and litigate later. 28 U.S.C. § 2201(a). But the Act makes an exception for "actions brought under . . . section 505 or 1146 of title 11." *Id.* Because of section 505, in other words, federal courts, including bankruptcy courts, can grant declaratory relief concerning federal taxes in cases subject to bankruptcy jurisdiction. A section 505 proceeding involving a request to determine an estate's federal tax liability would therefore "arise under" title 11 because without section 505 the request could not be litigated in federal court at all. *See, e.g., In re UAL Corp.*, 336 B.R. 370, 371 (Bankr. N.D. Ill. 2006) (concluding that a section 505 motion by chapter 11 debtors for a declaration that plan distributions were not wages subject to federal taxes "arose under" title 11). A refund claim is not similarly dependent on section 505. *See Dunmore*, 358 F.3d at 1115.

-10-

validity, extent, or priority of a lien are administrative matters. *Nelson*, 601 F.3d at 719. A

federal tax refund claim is not an administrative matter that takes place only in a bankruptcy

case. *See Swain*, 437 B.R. at 560 (noting that the debtor's claim seeking a determination of her

non-liability for a tax penalty under 26 U.S.C. § 6672 "can exist outside of bankruptcy").

　　　　Brown's tax refund claim, however, is "related to" Enesco's bankruptcy case. Under this

circuit's narrow definition, a proceeding is "related to" a bankruptcy case if the proceeding

"affects the amount of property for distribution [i.e., the debtor's estate] or the allocation of

property among creditors." *FedPak*, 80 F.3d at 213-14 (alteration in original) (internal quotation

omitted); *see also In re Memorial Estates, Inc.*, 950 F.2d 1364, 1368 (7th Cir.1991); *Elscint, Inc.*

*v. First Wis. Fin. Corp. (In re Xonics, Inc.)*, 813 F.2d 127, 131 (7th Cir.1987). The outcome on

Brown's claim will plainly affect the amount of property in Enesco's estate. If he is successful,

the penalties will be refunded, and more will be available for distribution to creditors. If he is

not, less will be available.

　　　　Because Count VI is "related to" the Enesco bankruptcy case, the claim is within the

subject matter jurisdiction granted to this court in section 1334(b). All other things being equal,

the court would be free at this point to proceed to the merits of the Rule 12(c) argument.[6]

———————————————

[6]　　　The difference between proceedings "arising under" and "arising in" the
bankruptcy and proceedings "related to" it does not affect subject matter jurisdiction, but it does
affect whether the bankruptcy court can enter a final judgment. *See Stern v. Marshall*, ___ U.S.
___, ___,131 S. Ct. 2594, 2605 (2011). Proceedings "arising in" or "arising under" are
considered core matters, and provided there is no constitutional impediment, the bankruptcy
court can enter final judgments. *Id.* A bankruptcy court is not authorized, however, to enter final
judgments without the parties' consent in proceedings merely "related to." *Id.* at ___, 131 S. Ct.
at s2604. It can only issue proposed findings of fact and conclusions of law to the district court
which enters the final judgment. *Id.* The Bankruptcy Rules try to resolve this issue early on by
requiring a plaintiff to plead in his complaint "that the proceeding is core or non-core and, if non-
core, [he] does or does not consent to entry of final orders or judgment by the bankruptcy judge."
Fed. R. Bank. P. 7008(a). The defendant must then admit or deny the allegation and "[i]f the

### ii.  The Jurisdictional Prerequisite in Section 505(a)(2)(B)

But all other things are not equal because the answer to the second question – whether

section 505(a)(2)(B) of the Code limits the subject matter jurisdiction of bankruptcy courts – is

also yes.

Section 505(a)(2)(B) imposes a limit on ability of a bankruptcy court to consider a tax

refund claim under section 505(a)(1).  Section 505(a)(1) permits the court to "determine the

amount or legality of any tax, any fine or penalty, relating to a tax, or any addition to tax . . . ."

11 U.S.C. § 505(a)(1).  Section 505(a)(2) then lists several limits on the court's ability to grant

the relief just described.  Among others, section 505(A)(2)(B) declares that the court "may not so

determine . . . (B) any right of the estate to a tax refund" unless the trustee first "properly

requests" the refund and receives a determination from "the governmental unit" or waits 120

days from the request.  Before the court can get involved in the dispute, in other words, the

trustee must first give the taxing authority – here, the IRS – an opportunity to review and decide

the request for the refund.

The condition in section 505(a)(2)(B) that a trustee request a refund from the taxing

authority before seeking relief from the court is jurisdictional in nature.  Whether a statutory

condition is jurisdictional (affecting the power of the court to hear a claim) or non-jurisdictional

(affecting the processing of the claim) depends on "the 'legal character' of the requirement."

*Reed Elsevier*, 559 U.S. at 166 (quoting *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 395

(1982)); *see also Arbaugh v. Y & H Corp.*, 546 U.S. 500, 515-16 (2006).  The legal character is

---

response is that the proceeding is non-core, . . . include a statement that [he] does or does not
consent to entry of final orders or judgment by the bankruptcy judge."  Fed. R. Bank. P. 7012(b).
Brown's amended complaint does not contain the allegation Rule 7008(a) requires.

"discerned by looking to the condition's text, context, and relevant historical treatment." *Reed*

*Elsevier*, 559 U.S. at 166. Relevant historical treatment concerns whether the Supreme Court has

viewed similar statutory conditions as jurisdictional. *Id.* But although the historical treatment of

the type of condition at issue is relevant, it is not dispositive. *Id.* at 169. The text and context of

a particular statutory condition may justify rejecting even the Court's longstanding view that a

particular type of condition is jurisdictional. *Id.*

Under this analysis, section 505(a)(2)(B) is a jurisdictional condition.[2/] First, the

language of section 505(a)(2)(B, "the court may not so determine." evinces an intent to

circumscribe the court's power to hear a request for a tax refund. The statute does not contain

the word "jurisdiction," but it does speak in jurisdictional terms, referring to the court and the

court's power to decide the matter. *See United States v. Williams*, 341 U.S. 58, 66 (1951)

(observing that jurisdiction is "the power to decide"). Only if the limiting condition –

presentation of a refund request to the taxing authority and a decision, or the passage of 120 days

from the request – is the court empowered to determine the right of the estate to a tax refund.

Second, the Court has historically treated as jurisdictional a similar condition on tax

_____

[2/]       This is so although, it should be noted, section 505 is not itself a grant of subject
matter jurisdiction. *See Johnston v. City of Middletown (In re Johnston)*, 484 B.R. 698, 713-14
(Bankr. S.D. Ohio 2012) (construing section 505 as allowing a bankruptcy court to determine tax
liability if the court otherwise has jurisdiction under sections 1334(a) or (b)); *Swain*, 437 B.R. at
562 (declaring that section 505 "is not a jurisdictional section at all"); *Holly's Inc. v. City of
Kentwood (In re Holly's, Inc.)*, 172 B.R. 545, 554 n.9 (Bankr. W.D. Mich. 1994) (same). Section
1334, not section 505, is the jurisdictional grant in bankruptcy cases. Section 505 instead
authorizes the court to decide certain tax questions, *see In re Stoecker*, 179 F.3d 546, 549 (7th
Cir. 1999), which entails granting a particular kind of relief. Authorizing a court to grant
particular kind of relief is different from authorizing the court to decide a particular kind of case.
*Ahmed v. Dep't of Homeland Sec.*, 328 F.3d 383, 386 (7th Cir. 2003). A court may have
authority to grant that relief, but it can do so only if it first has subject matter jurisdiction over the
proceeding in which the relief is sought. *Johnston*, 484 B.R. at 713-14; *Swain*, 437 B.R. at 562.

refund actions in the Internal Revenue Code.  Section 7422 of the IRC provides:

> [n]o suit or proceeding shall be maintained in any court for the
> recovery of any internal revenue tax alleged to have been
> erroneously or illegally assessed or collected, or of any penalty
> claimed to have been collected without authority, or of any sum
> alleged to have been excessive or in any manner wrongfully
> collected, until a claim for refund or credit has been duly filed with
> the Secretary, according to the provisions of law in that regard, and
> the regulations of the Secretary established in pursuance thereof.

I.R.C. § 7422(a).  Longstanding Supreme Court decisions have viewed this limit on tax refund

actions as jurisdictional.  *See, e.g., C.I.R. v. Lundy*, 516 U.S. 235, 240 (1996) (describing section

7422(a) as a jurisdictional prerequisite); *United States v. Williams*, 514 U.S. 527, 542 (1995)

(stating that "the jurisdiction conferred by § 1346(a)(1) is limited by 26 U.S.C. § 7422(a)");

*United States v. Dalm*, 494 U.S. 596, 602, 609 n.6 (1990) (holding that unless this section is

satisfied, the district court is "barred from entertaining" the action and the statute's "express

language . . . conditions a district court's authority to hear a refund suit"); *United States v. Felt &*

*Tarrant Mfg. Co.*, 283 U.S. 269, 272 (1931); *see also Bartley v. United States*, 123 F.3d 466, 468

(7th Cir.1997) (finding it "settled that unless the taxpayer has first filed a proper claim with the

Internal Revenue Service, a court lacks subject matter jurisdiction over a suit for refund").

Only the placement of section 505(a)(2)(B) in the Bankruptcy Code suggests that statute

might be other than jurisdictional.  Section 505(a)(2)(B) does not appear with the jurisdictional

statutes in title 28.  Rather, it appears in subchapter I of chapter 5 of the Bankruptcy Code which

addresses "creditors and claims."  That section 505(a)(2)(B) appears in the Code, however, and

not in title 28 is not enough to justify ignoring the statute's text or departing from the Supreme

Court decades-long treatment of conditions like this as jurisdictional.

Because section 505(a)(2)(B) is jurisdictional, then, Brown's amended complaint must

allege that the prerequisites of that section have been met even though section 1334(b) otherwise

grants subject matter jurisdiction over the claim in Count VI.

### iii. The Sufficiency of Brown's Allegations

Because the answer to the first two questions posed at the outset is yes, the third question

– whether the amended complaint alleges compliance with section 505(a)(2)(B) – must be

answered. The answer is no.

Brown's allegation about Lasko's letter to the IRS does not satisfy the jurisdictional

prerequisite in section 505(a)(2)(B) that a trustee "properly request" a refund. The letter was not

a proper request for procedural reasons and substantive ones. First, the procedural reason. To be

a "proper" refund request, the request must be made on the required IRS form (Tax Form 843).

*See* Treas. Reg. § 301.6402-2(c). Unless a refund is requested with Form 843, the request is not

proper, and the jurisdictional prerequisite is not satisfied. *Cf. Bartley*, 123 F.3d at 468 (holding

that a taxpayer did not satisfy the jurisdictional prerequisite of section 7422 because she did not

request a refund with Form 843). The Lasko letter is a letter, not Form 843 and so was not a

proper request. Second, and more important, the letter was not in substance a request for a

refund. Lasko "protest[ed]" the 2006 penalties and asked the IRS to "waive" them and sought an

"abatement." (Am. Compl. Ex. 10). But he did not say that Brown had paid the 2006 penalties,

did not ask for a refund of them, and never mentioned the 2007 penalties at all.

Brown argues that despite its deficiencies, the letter can be considered a proper (if

informal) request for a refund because the IRS knew Brown was asking for one. *See Goulding v.*

*United States*, 929 F.2d 329, 332-33 (7th Cir. 1991) (noting that any argument about a refund

claim's deficiency was waived when the IRS conceded it was "well aware" of the claim). But

Brown never alleges that the IRS knew Lasko wanted it to refund penalties paid rather than to

excuse Enesco from having to pay penalties in the first place (as the use of the terms "waiver"

and "abatement" suggests). Indeed, the IRS response to Lasko indicates the opposite. In

rejecting what it termed a request for a "penalty adjustment," the IRS told Brown he could pay

the penalties and then request a refund. (Am. Compl. Ex. 12). The IRS would not have made

that suggestion if it had known Brown had already paid the penalties and requested a refund.

Because Brown has not alleged that he ever made a proper request for the 2006 and 2007

penalties, he has not alleged facts that satisfy the jurisdictional condition in section 505(a)(2)(B).

Count VI must be dismissed for lack of subject matter jurisdiction.

### b.  Leave to Supplement the Complaint

Although Count VI must be dismissed, the dismissal is not a fatal blow to Brown's claim

against the United States. Brown asserts that after the amended complaint was filed, he properly

requested refunds of the 2006 and 2007 penalties from the IRS using Form 843, and the IRS

denied those requests. Brown asks to supplement his amended complaint pursuant Rule 15(d),

Fed. R. Civ. P. 15(d) (made applicable by Fed. R. Bankr. P. 7015), to allege these facts. He will

be allowed to do so.

Rule 15(d) provides that "[o]n motion and reasonable notice, the court may, on just terms,

permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event

that happened after the date of the pleading to be supplemented. The court may permit

supplementation even though the original pleading is defective in stating a claim or defense."

Fed. R. Civ. P. 15(d). The factors considered in deciding whether to allow a supplemental

complaint are the same ones considered in deciding whether to allow an amended complaint

-16-

under Rule 15(a). *Glatt v. Chicago Park Dist.*, 87 F.3d 190, 194 (7th Cir. 1996). They include

"undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure

deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue

of allowance of the amendment, [or] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182

(1962); *see also Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010).

These factors weigh in favor of letting Brown supplement his amended complaint. There

is no hint here of undue delay, bad faith, or dilatory motive in Brown's request, and the United

States does not claim that there is.[8] Nor would the proposed supplement be futile. To the

contrary, additional allegations concerning the refund requests and the IRS's decision to deny

them will correct the current jurisdictional defect. The United States does not disagree. Nor

does the United States suggest that it would be unduly prejudiced if Brown is allowed to

supplement the amended complaint, and there will be no prejudice. Brown's supplemented

amended complaint will add nothing to the substance of the refund claim that will catch the

United States off guard or alter or complicate its defense on the merits.

The only argument the United States advances against giving Brown leave to supplement

is a non-starter. According to the United States, Rule 15(d) cannot be used to correct a

jurisdictional defect.

---

[8]      Brown only asks to supplement the amended complaint in his response to the
motion to dismiss, not in a motion of his own. But the United States has not complained about
the lack of a formal motion and has addressed the merits of Brown' request. Since the request is
before the court and the United States has had an opportunity to address it, there is no reason to
stand on ceremony. *Cf. Peterson v. Hofmann (In re Delta Phones, Inc.)*, Nos. 04 B 823, 05 A
1205, 2005 WL 3542667, at *9 (Bankr. N.D. Ill. Dec. 23, 2005) (permitting an amendment under
Rule 15(a) to raise a new claim even without a request from the plaintiff to amend). Requiring
Brown to file the motion Rule 15(d) technically requires would only delay reaching the merits.

Not so.  It is true that federal jurisdiction "ordinarily depends on the facts as they exist

when the complaint is filed," *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 830 (1989),

and a complaint is supplemented under Rule 15(d) (as opposed to amended under Rule 15(a)) to

address events occurring after the original complaint was filed, 6A Charles Alan Wright, Arthur

R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1504 at 254 (3d ed. 2010)

(distinguishing amended and supplemental pleadings).  Nonetheless, even jurisdictional defects

can be cured in appropriate situations "if the plaintiff obtains leave to file a supplemental

pleading under Rule 15(d) reciting post-filing events that have remedied the defect."  *Black v.

Sec'y of Health & Human Servs.*, 93 F.3d 781, 790 (Fed. Cir. 1996); *see also Mathews v. Diaz*,

426 U.S. 67, 75 (1976); *Wilson v. Westinghouse Elec. Corp.*, 838 F.2d 286, 290 (8th Cir. 1988);

*Judicial Watch, Inc. v. U.S. Dep't of Energy*, 191 F. Supp. 2d 138, 139 (D.D.C. 2002).

Whether a supplemental pleading is appropriate for this purpose "depends on a careful

reading of the substantive provision at issue."  *Black*, 93 F.3d at 790.  A supplemental complaint

is not appropriate to cure a jurisdictional defect when the statute in question contains "an express

prohibition against filing a complaint before the expiration of a statutory waiting period.  *Id.*

When a statute merely imposes a prerequisite to filing that a plaintiff failed to meet, on the other

hand, a plaintiff will be allowed to supplement his complaint to allege that the prerequisite was

later met.  *See Central Pines Land Co., LLC v. United States*, 697 F.3d 1360, 1365-66 (Fed. Cir.

2012); *see, e.g., Diaz*, 426 U.S. at 75; *Black*, 93 F.3d at 790-91.

In this case, section 505(a)(2)(B) contains no express prohibition against Brown's filing a

complaint to determine the estate's right to a refund.  The statute simply imposes a prerequisite

that Brown had to meet before the court could adjudicate his claim.  Brown says he met that

-18-

prerequisite after his original complaint was filed, and it is appropriate to allow him to file a supplemental complaint alleging as much.

### 3. Conclusion

For these reasons, the motion of defendant United States of America to dismiss Count VI of the amended adversary complaint of plaintiff David R. Brown, chapter 7 trustee, is granted. Count VI is dismissed for lack of subject matter jurisdiction. Brown has leave to file a supplemental amended complaint. The IRS and IRS Commissioner are dismissed as parties. A separate order will be entered consistent with this opinion.

Dated: August 8, 2013

A. Benjamin Goldgar
United States Bankruptcy Judge

-19-